T.C. Memo. 1997-275

UNITED STATES TAX COURT

CHARLES A. DENNIS AND ALISON M. DENNIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25443-95.                    Filed June 18, 1997.

Charles A. Dennis, pro se.

<u>Horace Crump</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KÖRNER, <u>Judge</u>:  Respondent determined deficiencies in,
additions to, and penalties on petitioners' Federal income taxes
as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Sec. 6653(a)(1) | Penalty Sec. 6662 |
|------|-----------|------------------|-----------------|-------------------|
| 1988 | $29,348 | $6,226 | $1,473 | -- |
| 1989 | 24,951 | 4,988 | -- | $4,990 |
| 1990 | 17,475 | 3,228 | -- | 3,495 |
| 1991 | 18,416 | 3,480 | -- | 3,683 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.  A trial was held on October 21, 1996.  At trial, petitioner (references to petitioner in the singular are to Charles A. Dennis) testified on his own behalf.  No other witnesses were called.

Petitioners conceded that they failed to timely file their income tax returns for the years in issue.  They are accordingly liable for the additions to tax under section 6651(a)(1) for those years.  There remain six issues to decide.  They are as follows:

(1) Whether petitioners are entitled, for the 1991 taxable year, to a $48 deduction for bank fees incurred on an account which produced $45 of interest income.[1]  Petitioners are not so entitled.

(2) Whether petitioners must include $3,577 in income for the 1991 tax year.  Petitioners must include that amount in income for 1991.

---

[1]  Petitioner concedes on brief that the $45 interest was improperly excluded from his income on his 1991 return.

(3) Whether petitioners overstated their commission expense on Schedule C of their 1989 return by $403. We hold that they did.

(4) Whether amounts received by petitioner during the 1988 through 1991 tax years are advance commissions includable in income in those years, or loan proceeds. We hold that the amounts received were loan proceeds.

(5) Whether petitioners are liable for additional self-employment tax due on the increase in petitioners' nonemployee compensation for tax years 1988 through 1991. We hold that petitioners are liable for self-employment tax on a $403 increase of petitioners' nonemployee income for 1989.

(6) Whether petitioners were negligent or intentionally disregarded the rules or regulations in filing their tax returns for the years in issue and are liable for the additions to tax under section 6653(a) for 1988, and penalties under section 6662 for 1989 through 1991. We hold that the additions to tax or penalties do apply to the deficiencies as determined herein.

Petitioners resided in Prattville, Alabama, at the time they filed their petition in this case, which was December 6, 1995. Respondent sent a notice of deficiency for the 1988 through 1991 tax years on September 29, 1995.

FINDINGS OF FACT

Bank Fees

Petitioners failed to include $45 of interest income, earned from their bank account, on their 1991 income tax return.  There was no evidence presented as to whether the bank account was personal or business.  At the time of filing of their return, petitioners reasoned that because they incurred $48 of bank fees in obtaining such interest, they could net the two and exclude the income and not claim the deduction.  Petitioners conceded that the interest was properly includable in income for the 1991 tax year, but claim that they are entitled to a $48 deduction as an ordinary and necessary trade or business expense for the 1991 taxable year.

Unreported Income

During 1991, petitioner purchased from Doug Priester insurance policies on himself, his wife, and his children.  Doug Priester issued a Form 1099 to the Internal Revenue Service and (allegedly) to petitioners, indicating that petitioners had received $3,577 as gross income in the form of a discount on insurance sold to them.  Respondent determined in the notice of deficiency that petitioners failed to report the $3,577 in gross income for the 1991 tax year.  Petitioner argues that he did not receive a copy of Form 1099, that he was not in the position to have performed services for Doug Priester for which payments may have been made, and that he received no money from Doug Priester.

While he denies that he received a $3,577 discount, he acknowledges that he may have received a discount, but he does not know the size of it. Petitioner did not put into evidence the insurance policies, evidence as to his basis in such policies, the cost, or the fair market value of such policies.

Commission Expense

Respondent determined that petitioners overstated the commission expense shown on Schedule C of their 1989 Federal income tax return by $403. Petitioner testified that he presented respondent with substantiation of the $403 deduction. No such substantiation was introduced into evidence at trial.

Advance Commissions

Petitioner was an insurance sales agent for American Service Underwriters, Inc. (American), for the years 1988 through 1991. Petitioner was paid advance insurance sales commissions in the amounts of $93,413, $17,839.79, $51,161, and $42,529 for the 1988, 1989, 1990, and 1991 tax years, respectively. Under petitioner's contract with American, he would receive a monthly draw against his future commission income. Petitioner signed a note, dated July 14, 1986, which made him personally liable on the advance commissions, payable on demand. Regarding such personal liability, the contract with American provided:

> 7. INDEBTEDNESS: Any and all indebtedness of any kind or nature owed by [petitioner] to [American] shall be and serve as a first lien on any commissions due or to become due said [petitioner]. [American has] the right and may at any time elect to withhold or offset

against all accrued commissions, any debt due from [petitioner] arising from all transactions under this or any previous contract.  Any debit balance that has not paid itself off within 12 months after the termination of this contract will be due and payable as described in 15.b below and no additional bonus commissions will be due and payable to [petitioner] under this contract.

*       *       *       *       *       *       *

15.b.  Any refunds or indebtedness owed by [petitioner] arising under this contract, or arising in any other matter, less accrued commissions due [petitioner] shall be due and payable within thirty (30) days after written demand by [American] * * *

Petitioner had complete dominion and control over the advance commissions (other than an obligation to make repayment) and did not include in income any amount received as an advance commission.  The advance commissions were recorded in an advance commissions account.  The advance commissions account was offset, or reduced, by the amount of actual commissions later earned by petitioner.  The advances were charged a 1.3 percent-administrative fee each month.  In the event that there were a debit balance at the end of 12 months after the termination of the relationship between petitioner and American, such balance would be due and payable on demand.  Petitioner received a termination letter from American on December 10, 1992.  At that time, there was a debit balance in the advance commissions account of approximately $156,000.  This balance had been eliminated by the time of trial, and American never demanded payment from petitioner.  Petitioner alleged that demand was

never made because his payments on the balance were current. The debit balance was paid by later commissions earned (year not shown). Because such later commissions covered the payment due on the loans, petitioner was never required to make an out-of-pocket payment on the debit balance.

## Self-Employment Tax

Respondent determined that due to the increase in petitioner's nonemployee compensation for the tax years 1988 through 1991, petitioners were liable for increased self-employment tax under section 1401. Petitioner asserts that he did not receive the income in question because the amounts received constituted loan proceeds, and therefore there is no self-employment tax due.

## Additions to Tax

Petitioners neither requested nor received extensions of time from the Internal Revenue Service to file their returns. Petitioners did not timely file their returns for the years at issue, and they do not deny that such returns were not timely filed.

OPINION

Generally, petitioners have the burden of proving that the determinations made by respondent in the notice of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

## Bank Fees

Petitioners have conceded that $45 should have been reported as interest income in 1991 earned on a bank account. They claim that they are entitled to a deduction of $48, the amount of bank fees incurred in maintaining the account either as an ordinary and necessary trade or business expense, under section 162, or as an ordinary and necessary expense incurred for the production of income, deductible under section 212.

The general rule is that bank fees are deductible only if the bank account on which the fees were incurred was used for business purposes. Callander v. Commissioner, 75 T.C. 334 (1980). The only evidence that the account was used for business purposes is petitioners' testimony at trial. Petitioner failed to offer into evidence any records that would show that this account was not used for personal purposes. Petitioners are accordingly not entitled to any deduction for the bank charges.

Unreported Income

Respondent determined that petitioners received income in the form of discounted insurance premiums from Doug Priester in 1991. Petitioner testified at trial that he performed no services for Doug Priester and that he did not receive a Form 1099--or cash--from Priester. Petitioner did purchase insurance from Priester, but offered nothing into evidence on this issue that would rebut the determination that he received a discount that constituted income.

On brief, petitioner asserts that respondent has not carried the burden of proving the accuracy of the disputed Form 1099. For support, he cites section 6201(d), which provides:

> (d) Required Reasonable Verification of Information Returns.--In any court proceeding, if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the Secretary * * * by a third party and the taxpayer has fully cooperated with the Secretary (including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

Petitioner claims that he has fully cooperated with respondent by granting access to all records and information for the tax years in question and therefore urges that respondent has failed to carry the burden of proving the accuracy of the disputed Form 1099.

The notice of deficiency in this case is dated September 29, 1995. The petition is dated December 6, 1995. Section 6201(d), amended by sec. 602, Taxpayer Bill of Rights II, Pub. L. 104-168, 110 Stat. 1452, 1463 (1996), is effective as of July 30, 1996. The trial was held on October 21, 1996. Assuming arguendo that section 6201(d) is applicable in this case, it provides that if the taxpayer, in a court proceeding, asserts a reasonable dispute with respect to income reported on an information return, and fully cooperates with respondent, then respondent shall have the burden of producing reasonable and probative information in

addition to the information return.  See Hardy v. Commissioner, T.C. Memo. 1997-97.

The income in question in this case was earned from Doug Priester in the form of a discount.[2]  Petitioner testified on cross-examination that his only relationship with Doug Priester was to buy insurance from him.  Petitioner denied that the discount received from Mr. Priester was $3,577, but then admitted that he did not know the exact size of the discount, a tacit admission that there was a discount.  Petitioner has not substantiated the size of the discount, but testified that he would have done so had he received a Form 1099 from Priester.

Petitioner, as the purchaser of the insurance, presumably had within his control evidence concerning the insurance policies, such as the policies themselves, the price paid for them, and their fair market value.  Petitioner failed to introduce such evidence or offer an explanation as to why he could not produce it.  Cf. Schaeffer v. Commissioner, T.C. Memo. 1994-206, where the taxpayers failed to furnish any records or other information concerning unreported income in question, failed to show that the third-party information respondent used was unreliable or inaccurate, and did not deny that they received the income in question.  This Court held that the taxpayers failed to show that the notice of deficiency was arbitrary, which

---

[2]  Petitioner does not argue, and the record does not support, that any discount received was a purchase discount.

would have caused a shift in the burden of going forward with the evidence.

Section 6201(d) requires petitioner to show that he fully cooperated with respondent, and to make a reasonable dispute. Petitioner did not deny that he received the income at issue. Rather, he stated that he performed no services for and received no cash from Priester. Even if these statements were true, they would not disprove receipt of the income in question, such income being in the form of a discount. Petitioner tacitly admitted to receiving a discount. This does not constitute a reasonable dispute. Furthermore, the record contains no evidence other than petitioner's testimony, which casts doubt on petitioner's statement on brief that he fully cooperated with respondent. See Schaeffer v. Commissioner, T.C. Memo. 1994-206. Because petitioner has failed to show a reasonable dispute as to the income in question, and has failed to fully cooperate with respondent, the burden of going forward and producing "reasonable and probative information" concerning the deficiency beyond the information return has not shifted to respondent. As to the ultimate burden of proof, in light of the complete lack of evidence beyond petitioner's testimony, we conclude that petitioner also has not met his burden of proving that he failed to receive the income in question in 1991. See Kluger v. Commissioner, 91 T.C. 969, 976-977 (1988); Kluger v. Commissioner, 83 T.C. 309, 310 n.1 (1984); Petersen v.

<u>Commissioner</u>, T.C. Memo. 1995-212, affd. without published opinion 85 F.3d 624 (5th Cir. 1996).

<u>Commission Expense</u>

In the notice of deficiency, respondent disallowed $403 of commission expenses claimed by petitioners on Schedule C of their 1989 returns. Petitioner testified that he presented substantiation to respondent at some point, yet failed to introduce any such substantiation for this Court to review. Generally, petitioners have the burden of proving that the determinations made by respondent in the notice of deficiency are erroneous. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111 (1933). Petitioners have failed to meet their burden of establishing their entitlement to the additional $403 of commission expense. Accordingly, we hold for respondent on this issue.

<u>Advance Commissions</u>

Petitioner received advance commissions of $93,413, $17,839.79, $51,161, and $42,529 for the 1988, 1989, 1990, and 1991 tax years, respectively. Respondent determined that these advance commissions were income when received because petitioner had complete dominion and control over the proceeds, there was no fixed date for repayment, and petitioner never had to repay his employer for the excess commissions. Petitioner contends that these amounts received are loans for which petitioner was personally liable and which he did in fact fully repay.

Generally, income is taxable when it is received. Sec. 451. When a person receives amounts without an obligation to repay such amounts, and without restriction as to the disposition or use of the amounts received, such amounts are income to the person. James v. United States, 366 U.S. 213 (1961). The proceeds of a loan are generally not taxable as income because the benefit of the income is offset by an obligation to repay. United States v. Rochelle, 384 F.2d 748 (5th Cir. 1967); Milenbach v. Commissioner, 106 T.C. 184, 195 (1996). The determination of whether or not moneys received are the proceeds of a loan or income is to be determined upon consideration of all of the facts. Fisher v. Commissioner, 54 T.C. 905, 909 (1970).

In the context of insurance agents who receive advances based on future commission income, whether or not such advances constitute income depends on whether, at the time of the making of the payment, the recipient had unfettered use of the funds and whether there was a bona fide obligation on the part of the agent to make repayment. If the funds advanced are merely deposits, of which the taxpayers do not have free and unrestricted use, they will not be treated as income. Cf. Van Wagoner v. United States, 368 F.2d 95 (5th Cir. 1966). In many instances, repayment is simply made out of future earned commissions. Where the repayments will be taken only from future commissions earned, and the agent would not become personally liable in the event that the future income does not cover the repayment schedule, the

payments will constitute income to the recipient. <u>Moorman v. Commissioner</u>, 26 T.C. 666, 674 (1956). These payments are nothing more than disguised salary. <u>Beaver v. Commissioner</u>, 55 T.C. 85, 90 (1970). In the situation where the advances are actually loans, when the repayments are offset directly by the future earned commissions, then the recipient will have either commission income or cancellation of indebtedness income at the time of such offsets. <u>Cox v. Commissioner</u>, T.C. Memo. 1996-241; cf. <u>Warden v. Commissioner</u>, T.C. Memo. 1988-165.

The advance insurance sales commissions here were received during the 1988, 1989, 1990, and 1991 tax years. At the time petitioner's contract with American was terminated, petitioner had a debit balance in his advance commissions account of approximately $156,000. This balance had been paid by the time of trial in this case. Petitioner testified that he never defaulted on repayments of the advance commissions, so there was never any need for demand to be made. Although demand was not made, under the contract and note, had petitioner defaulted, American had the right to demand payment under the contract and loan agreement. Thus, petitioner was personally liable on the loans. This is the distinguishing feature between this case and other advance commission cases, where no personal liability existed in the event of a termination. <u>Beaver v. Commissioner</u>, 55 T.C. 85 (1970); <u>Moorman v. Commissioner</u>, <u>supra</u>; <u>George Blood Enterprises, Inc. v. Commissioner</u>, T.C. Memo. 1976-102. In

Beaver v. Commissioner, supra, advance commissions were not loans because personal liability did not attach until after the years in question, while at the time the advances were made there was no personal liability, and the payor treated the advances as salary advances.

Additionally, there was an administration fee of 1.3 percent per month charged against the advance commissions balance. Although it was not referred to as interest, petitioner testified that the parties referred to and treated the fee as interest. In light of the facts and circumstances in the record, this testimony is logical and is accepted as fact. Given these facts, we find that the advance commissions were loans and need not be included in income where the income was earned as commissions on sales or renewals perhaps in a later year. Respondent did not determine the amount of income earned when petitioner sold insurance.

Self-Employment Tax

Having decided that petitioner's receipt of the advance commissions constituted loan proceeds and not income, it follows that they are not liable for self-employment tax in the years in question on those amounts received. However, a deduction of $403 on Schedule C has been disallowed due to a lack of substantiation. Petitioners' nonemployee income is therefore increased by $403, necessitating an increase in the self-employment tax on that amount. Sec. 1401. Respondent concedes

that any increase in the self-employment tax causes a corresponding increase in the deduction for taxes paid on self-employment income. Sec. 164(f).

Additions to Tax

Respondent determined that petitioners were negligent or intentionally disregarded the rules or regulations in filing their 1988 Federal income tax return under section 6653(a) and their 1989 through 1991 Federal income tax returns under section 6662. Petitioners do not deny that they were negligent or intentionally disregarded the rules or regulations, but instead insist that there was no deficiency. Petitioners offered no evidence which would disprove respondent's determination to the extent we have sustained respondent herein. To the extent of the deficiencies decided by this opinion, the additions to tax and penalties for the tax years will apply.

Decision will be entered

under Rule 155.