T.C. Summary Opinion 2016-32

UNITED STATES TAX COURT

JOHN J. SWEENEY AND DONNA L. SWEENEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7510-15S.                      Filed July 5, 2016.

John J. Sweeney and Donna L. Sweeney, pro sese.

<u>Patrick F. Gallagher</u>, for respondent.

SUMMARY OPINION

LAUBER, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursu-

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect
for the tax year at issue.  We round all dollar amounts to the nearest dollar.

ant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

The Internal Revenue Service (IRS or respondent) sent petitioners a notice of deficiency for 2012 determining a tax deficiency of $10,555 and a penalty of $2,111 under section 6662(a) and (b)(2). The parties submitted before trial a stipulation of facts in which petitioners conceded that they had received $31,496 of unreported income during 2012 and in which respondent conceded that petitioners were entitled to certain additional deductions. These concessions generated a revised tax deficiency of $7,283, which the parties have stipulated to be correct. After these concessions, the only issue remaining for decision is whether petitioners are liable for an accuracy-related penalty in the revised amount of $1,456. We conclude that they are.

## Background

We incorporate the stipulation of facts and the related exhibits by this reference. Petitioners resided in Massachusetts when they filed their timely petition with this Court.

John J. Sweeney (petitioner) finished high school and had a talent for sales. About 25 years ago he began to specialize in the sale of long-term care insurance, working principally from his home. This type of insurance is offered by numerous

underwriters, and petitioner worked with his clients to decide which product was best for them.

If a client purchased a long-term-care insurance product, the underwriter would pay commissions to petitioner for as long as the policy remained in force. The underwriters typically reported these commission payments to petitioner and the IRS on Forms 1099-MISC, Miscellaneous Income. Petitioner also received wage income from one or more underwriters. The underwriters reported this wage income to petitioner and the IRS on Forms W-2, Wage and Tax Statement.

During good years petitioner earned substantial commission income and often received Forms 1099-MISC from as many as 12 different underwriters. His business declined significantly during the 2008-2010 recession as financially strapped consumers cut back on inessential purchases. This falloff caused petitioners to endure financial stress. They lost their home in 2011 and moved three times during the ensuing year. They filed for bankruptcy in 2012 and received a discharge in 2013.

For 2012 petitioner received a Form W-2 from Genworth North America reporting wages of $85,342. Petitioner wife, a nurse, received a Form W-2 from Jordan Hospital reporting wages of $69,251. Petitioners timely filed Form 1040,

U.S. Individual Income Tax Return, for 2012, correctly reporting on line 7 combined wages of $154,593.

Petitioners included in their return a Schedule C, Profit or Loss From Business, reporting income and expenses of petitioner's insurance sales business. Petitioner there reported gross receipts of $4,207 from insurance sales and total expenses of $11,626. This produced a reported loss of $7,419.

The IRS received Forms 1099-MISC from four payors reporting that they had paid petitioner during 2012 commissions or other income in the following amounts:

| Payor | Amount |
|-------|--------|
| Genworth Life Ins. Co. | $3,266 |
| John Hancock Life Ins. Co. | 3,852 |
| MedAmerica Ins. Co. | 3,574 |
| Specialty Planners, Inc. | 25,011 |
| Total | 35,703 |

Because of the mismatch between these amounts and petitioner's reported Schedule C gross receipts, the IRS selected petitioners' 2012 return for examination. In a timely notice of deficiency the IRS determined that petitioners had omitted Schedule C gross receipts of $31,496 (i.e., $35,703 – $4,207). Petitioners

concede that this adjustment is correct and that petitioner received unreported income of $31,496 from the four payors listed above.

At trial petitioners acknowledged that they had received by mail the two Forms W-2 reporting their wage income for 2012. But they testified that, because of their frequent moves during 2012, they had not received all of the Forms 1099-MISC reporting petitioner's commission income. Petitioner testified that he kept records for his insurance-sales business but said that these records consisted mainly of expenses. He testified that keeping track of his commission income "was impossible" because the checks arrived in small and variable amounts.

Petitioners had their 2012 return prepared by a professional return preparer with whom they had a lengthy relationship. They met with him to review the return before it was filed. Petitioners acknowledged at trial that they did not carefully examine the amounts of income and loss shown on this return. Petitioner admitted that he thought he had made a profit from his insurance-sales business during 2012, but he did not question the preparer about the loss of $7,419 shown on line 12 of the Form 1040. Neither petitioner could explain how the $4,207 of gross receipts reported on the Schedule C was derived. That amount bears no relationship to any number on any of the Forms 1099-MISC, and petitioner

acknowledged that the reported gross receipts of $4,207 "couldn't possibly be right."

### Discussion

The Code imposes a 20% penalty upon the portion of any underpayment of tax that is attributable (among other things) to "[a]ny substantial understatement of income tax." Sec. 6662(a), (b)(2). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A).

Under section 7491(c) the Commissioner bears the burden of production with respect to the liability of an individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The understatement of income tax in this case equals the stipulated deficiency of $7,283; that amount exceeds $5,000, which is greater than 10% of $24,493, the tax required to be shown on petitioners' 2012 return. Respondent has thus carried his burden of production by demonstrating a "substantial understatement of income tax." See sec. 7491(c).

The section 6662 penalty does not apply to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith" with respect to it. Sec. 6664(c)(1). The taxpayer bears the burden of proving reasonable cause and good faith. Higbee, 116 T.C. at 446-

447. The decision whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Generally, the most important factor in determining the existence of "reasonable cause" is the taxpayer's effort to ascertain his or her tax liability correctly. Sec. 1.6664-4(b)(1), Income Tax Regs. Reasonable cause can be shown by good-faith reliance on the advice of a qualified tax professional. Id. paras. (b)(1), (c). To justify such reliance, "[t]he advice must be based upon all pertinent facts and circumstances." Id. para. (c)(1)(i). Other conditions that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id. para. (b)(1).

We find that petitioners did not make a good-faith effort to ascertain their 2012 tax liability correctly. Petitioner had operated his insurance-sales business for 25 years, and he received commission income annually. He received $35,703 of commission income during 2012, yet he inexplicably reported only 12% of this sum. His alleged nonreceipt of the Forms 1099-MISC is not a defense; many taxpayers receive taxable income for which Forms W-2 and Forms 1099-MISC are not provided, but they are nevertheless obligated to report such income. See, e.g.,

Ashmore v. Commissioner, T.C. Memo. 2016-36, at *15 (Form W-2); Dennis v. Commissioner, T.C. Memo. 1997-275, 73 T.C.M. (CCH) 3061, 3063-3064 (Form 1099-MISC); Du Poux v. Commissioner, T.C. Memo. 1994-448, 68 T.C.M. (CCH) 667 (Forms W-2 and 1099-MISC). Had petitioner kept accurate records of his business income and expenses, which section 6001 required him to do, non-receipt of the Forms 1099-MISC would not have mattered.

Petitioners contend that they had reasonable cause for failing to report $31,496 of commission income because they relied on their return prepare to pre-pare their tax return accurately. This argument is unpersuasive for two reasons. First, petitioners did not establish that they supplied their preparer with all the information--specifically, accurate records of petitioner's insurance-sales busi-ness--needed to prepare a correct return. See sec. 1.6664-4(c)(1)(i), Income Tax Regs.

Second, even if petitioners had provided their preparer with all necessary information, they did not act reasonably because they failed to review the com-pleted return before it was filed. Had petitioners made even a cursory review of that return, they would have seen a loss of $7,419 on line 12, whereas petitioner believed that his insurance-sales business had been profitable. And they would have seen gross receipts of only $4,207 on Schedule C, which petitioner admitted

"couldn't possibly be right." Having declined to review their own return, petitioners may not shift responsibility for its accuracy to their accountant. See Stough v. Commissioner, 144 T.C. 306, 322-323 ( 2015); Woodsum v. Commissioner, 136 T.C. 585, 595-596 (2011); Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987) (finding no reasonable cause where review of return would have revealed omission of dividend income); Magill v. Commissioner, 70 T.C. 465, 479-480 (1978) ("Even if all data is furnished to the preparer, the taxpayer still has a duty to read the return and make sure all income items are included."), aff'd, 651 F.2d 1233 (6th Cir. 1981).

To reflect the foregoing,

An appropriate decision will be entered.