T.C. Memo. 2003-85

UNITED STATES TAX COURT

WILLIAM MAHER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1884-01.                    Filed March 25, 2003.

William Maher, pro se.

<u>Diana P. Hinton</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency of
$34,045 in and additions to tax under sections 6651(a)(1),[1]
6651(a)(2), and 6654(a) of $2,958.97, $1,117.83, and $491.49,
respectively, on petitioner's 1998 Federal income tax.

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

After concessions,[2] the issues for decision are: (1) How much of an alimony deduction petitioner is entitled to for 1998; (2) whether petitioner is entitled to claim dependency exemptions for his children for 1998; (3) whether petitioner is entitled to claim head of household filing status for 1998; (4) whether petitioner is entitled to deduct any amount for unreimbursed employee business expenses for 1998; and (5) whether petitioner is liable for the addition to tax pursuant to section 6651(a)(1) for 1998.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are

---

[2] Mr. Maher stipulated that he received income in excess of the amount determined by respondent. Respondent stipulated that Mr. Maher had total prepaid Federal income tax credits of $20,894, paid $12,698 in State and local income taxes, and made $400 in charitable contributions for 1998. Respondent conceded that Mr. Maher is entitled to an alimony deduction consisting of one-half of the mortgage payments (principal and interest) he paid, one-half of the real estate taxes he paid, one-half of the homeowners insurance he can prove he paid, and the health and automobile insurance he can prove he paid on behalf of his wife. Respondent conceded that Mr. Maher is entitled to deduct as an itemized deduction the other half of the mortgage interest and real estate taxes paid.

At trial and on brief, Mr. Maher did not address the additions to tax pursuant to secs. 6651(a)(2) and 6654(a). Therefore, we find that Mr. Maher abandoned these issues. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987).

incorporated herein by this reference.  At the time he filed his petition, William Maher (Mr. Maher) resided in Staten Island, New York.

## Mr. Maher's Separation From His Wife

In August 1983, Mr. Maher and Donna Maher (Mrs. Maher) purchased a home located at 305 Livermore Avenue, Staten Island, New York (305 Livermore).  Mr. Maher and Mrs. Maher have two children:  Kristen Maher (Kristen), born October 21, 1984, and William Maher, Jr. (Billy), born December 18, 1986.

In May 1996, Mr. Maher moved out of 305 Livermore.  During 1998, he lived at 966 Clove Road, Staten Island, New York (966 Clove).

On or about the date he moved out of 305 Livermore, Mr. Maher filed for divorce from Mrs. Maher.  As of the time of trial, Mr. Maher and Mrs. Maher were separated but not divorced.

On October 17, 1996, the Supreme Court of the State of New York issued an order, pendente lite (1996 order), requiring Mr. Maher to pay:  (1) The existing first mortgage, real estate taxes, and homeowner's insurance on 305 Livermore, (2) the unreimbursed medical and prescription drug expenses of Mrs. Maher and their two children, (3) the automobile insurance on two cars, (4) $651 per week of child support, and (5) his children's school tuition.  The 1996 order gave Mrs. Maher exclusive use and occupancy of 305 Livermore.

The 1996 order gave Mr. Maher and Mrs. Maher joint legal custody of both children and gave Mrs. Maher primary physical custody of both children. The 1996 order ordered that Mr. Maher was to have physical custody of both children every weekend from Friday evening at 7 p.m. through Sunday evening at 7:30 p.m. Mrs. Maher had the right to have both children on the third weekend of each month, but she was not required to have them on that weekend. Additionally, the 1996 order ordered that Mr. Maher was to have physical custody of both children from 6:30 p.m. to 8:30 p.m. on every Wednesday.

On June 9, 1998, the Supreme Court of the State of New York issued a decision and order in response to a motion for change in custody of both children (1998 order). The court stated that "Clearly, the joint custody arrangement has failed." The court painted an extremely unflattering portrait of Mrs. Maher and noted that the court-appointed expert recommended that Mr. Maher have sole custody of both children. The court, however, decided that Mr. Maher should have sole physical custody of Kristen only. The court granted sole physical custody of Kristen to Mr. Maher effective July 12, 1998.

Neither the 1996 order nor the 1998 order states who is entitled to claim the dependency exemptions for Kristen or Billy. Mrs. Maher did not sign a release of dependency exemption for Kristen or Billy for 1998.

During 1998, Kristen lived with Mr. Maher at 966 Clove virtually the whole year. During 1998, Billy lived with Mr. Maher at 966 Clove for most of the year.

Payments Made by Mr. Maher

In 1998, Mr. Maher paid the following amounts: (1) Mortgage payments on 305 Livermore totaling $9,271.80 in principal, $4,086.33 in interest, and $1,546.39 in real estate taxes; (2) $812 in homeowners insurance on 305 Livermore; (3) $2,688 in health insurance premiums; and (4) $2,364 in automobile insurance. Thirty percent of Mr. Maher's health insurance premiums were for the benefit of Mrs. Maher.

During 1998, Mr. Maher owned a 1990 model year car, and Mrs. Maher owned a 1996 model year car. Mr. Maher paid for collision coverage on Mrs. Maher's car but not on his car.

Mr. Maher's Professional Background

Mr. Maher has been a certified public accountant for approximately 15 years. In 1977, he received a B.A. in accounting from New York University. In 1983, he received an M.S. in tax from Long Island University.

From 1977 through 1978, Mr. Maher worked as a financial consultant for AT&T. During 1979, he performed tax work for the City of New York. During 1980, he worked for the Internal Revenue Service as a revenue agent. From 1980 through 1983, he was an auditor at Deloitte, Haskins & Sells. From 1983 through

1996, Mr. Maher worked in the tax department of the New York Times. When he left the New York Times in 1996, Mr. Maher was its tax director. From 1997 through September 2001, Mr. Maher performed financial consulting and tax work for Coopers & Lybrand and its successor (Coopers). In 1998, he was a manager at Coopers and worked in the Stamford, Connecticut, office. Since September 2001, Mr. Maher has been a financial consultant and tax return preparer for individuals.

<u>Mr. Maher's 1998 Tax Return</u>

Mr. Maher received a Form W-2, Wage and Tax Statement, from Coopers for 1998 reporting $121,145 in wages. He also received Forms 1099-DIV and 1099-INT for 1998 reporting dividends and interest.

Before 1998, Mr. Maher filed all of his required tax returns. He did not file a Federal individual income tax return for 1998. Mr. Maher knew that he was required to file a tax return for 1998 by April 15, 1999. In 2001, he provided a copy of an unfiled return for 1998 to respondent.

OPINION

Deductions are a matter of legislative grace, and the taxpayer has the burden of showing that he is entitled to any deduction claimed.[3] Rule 142(a); <u>New Colonial Ice Co. v.</u>

---

[3] Mr. Maher does not contend that sec. 7491(a) is applicable to this case.

Helvering, 292 U.S. 435, 440 (1934).  Mr. Maher's testimony was credible, and the testimony of other witnesses and documentary evidence corroborated his testimony.  Under the circumstances presented here, we will rely on Mr. Maher's testimony to sustain his burden of establishing error in respondent's determinations.

Alimony

Section 215(a) permits a deduction for the payment of alimony which is includable in the gross income of the recipient under section 71.  Section 71(b)(1) defines alimony or separate maintenance as any cash payment meeting the four criteria provided in subparagraphs (A) through (D) of that section.

Respondent concedes that Mr. Maher is entitled to an alimony deduction consisting of one-half of the mortgage payments (principal and interest) he paid, one-half of the real estate taxes he paid, one-half of the homeowners insurance he paid, and the health and automobile insurance he paid on behalf of Mrs. Maher.  Mr. Maher does not argue that he is entitled to an amount greater than that conceded by respondent.  The parties simply dispute the total amount.

We found that Mr. Maher paid principal and interest for the mortgage, and real estate taxes on 305 Livermore totaling $9,271.80, $4,086.33, and $1,546.39, respectively.  Accordingly, one-half of the principal, interest, and real estate taxes equals

$4,635.90, $2,043.17, and $773.20, respectively.  We conclude that Mr. Maher is entitled to deduct these amounts as alimony.

We found that Mr. Maher paid homeowners insurance on 305 Livermore totaling $812.  Accordingly, one-half of the homeowners insurance equals $406.  We conclude that Mr. Maher is entitled to deduct this amount as alimony.

We found that Mr. Maher paid $2,688 in health insurance premiums in 1998 and that 30 percent of Mr. Maher's health care premiums were for the benefit of Mrs. Maher.  Accordingly, we conclude that Mr. Maher is entitled to deduct $806.40 of the health care premiums as alimony.

The evidence establishes that Mr. Maher paid $2,364 in automobile insurance in 1998.  When a taxpayer establishes that he has incurred a deductible expense but is unable to substantiate the exact amount, we can estimate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  On the basis of the record presented, we estimate that one-half of the automobile insurance was attributable to Mrs. Maher.  Accordingly, we conclude that Mr. Maher is entitled to deduct $1,182 of the automobile insurance as alimony.

Accordingly, Mr. Maher is entitled to an alimony deduction of $9,846.67 in 1998.

Dependency Exemptions

Section 151(c) allows taxpayers an annual exemption for each "dependent" as defined in section 152.  Section 152(a) defines dependents as certain individuals, including sons and daughters, "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer)".

The support test in section 152(e)(1) applies if:  (1) A child received over of half his support during the calendar year from his parents; (2) the parents are (a) divorced or legally separated under a decree of divorce or separate maintenance, (b) separated under a written separation agreement, or (c) living apart at all times during the last 6 months of the calendar year; and (3) such child is in the custody of one or both of his parents for more than one-half of the calendar year.  If these requirements are satisfied, as is the case herein, the "child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for the greater portion of the calendar year".  Id.  This parent is referred to as the "custodial parent".  Id.

To decide who has custody, section 1.152-4(b), Income Tax

Regs., provides that custody is "determined by the terms of the most recent decree of divorce or separate maintenance, or subsequent custody decree, or, if none, a written separation agreement."  In the event of so-called split custody, as is the case herein, custody is "deemed to be with the parent who, as between both parents, has the physical custody of the child for the greater portion of the calendar year."  Id.

We have repeatedly held that we look to where the child resided to determine which parent had physical custody for purposes of section 152(e)(1).  Neal v. Commissioner, T.C. Memo. 1999-97; Otmishi v. Commissioner, T.C. Memo. 1980-472; Dumke v. Commissioner, T.C. Memo. 1975-91, affd. without published opinion 524 F.2d 1230 (5th Cir. 1975); see also Meyer v. Commissioner, T.C. Memo. 2003-12; Horn v. Commissioner, T.C. Memo. 2002-290; Nieto v. Commissioner, T.C. Memo. 1992-296.  Even if the custody decree grants physical custody to one parent, we have held that this parent is not entitled to a dependency exemption when the children did not live with this parent for most of the year. Otmishi v. Commissioner, supra; Dumke v. Commissioner, supra.

We found as a fact that Kristen and Billy resided with Mr. Maher for most of 1998.  Therefore, for purposes of section 152(e), Mr. Maher is the custodial parent.  Accordingly, Mr. Maher is entitled to claim exemptions for both Kristen and Billy for 1998.

Head of Household

An individual qualifies as a head of household if the individual is not married at the close of the taxable year and maintains as his home a household that constitutes for more than one-half of the taxable year the principal place of abode of an individual who qualifies as the taxpayer's dependent within the meaning of section 151. Sec. 2(b)(1)(A)(ii). An individual who is legally separated from his spouse under a decree of divorce or separate maintenance shall not be considered married. Sec. 2(b)(2)(B).

Respondent concedes that if Mr. Maher is entitled to one exemption, he is entitled to claim head of household status. We concluded that Mr. Maher is entitled to claim dependency exemptions for Kristen and Billy. Accordingly, Mr. Maher is entitled to claim head of household status.

Unreimbursed Employee Expenses

Mr. Maher claims he is entitled to deduct $9,160 in unreimbursed employee business expenses. This amount comprises $6,910 of vehicle expenses and $2,250 of business expenses that do not include meals, entertainment, and travel expenses.

Mr. Maher testified that in 1998 he drove "maybe 50--60 thousand miles on my car" for work. Mr. Maher, however, submitted no documentation or receipts to substantiate any of the employee business expenses he claims he incurred or paid in 1998.

He also testified that his employer has a reimbursement policy for employee business expenses. Mr. Maher, however, did not submit any evidence that his employer did not reimburse him for his alleged business expenses.

Pursuant to section 162(a), a taxpayer may deduct all of the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business including a trade or business as an employee. Lucas v. Commissioner, 79 T.C. 1, 6 (1982). An employee cannot deduct trade or business expenses to the extent that the employee is entitled to reimbursement from his or her employer for expenditures related to his or her status as an employee. Id. at 7; Kennelly v. Commissioner, 56 T.C. 936, 943 (1971), affd. without published opinion 456 F.2d 1335 (2d Cir. 1972); Stolk v. Commissioner, 40 T.C. 345, 356 (1963), affd. 326 F.2d 760 (2d Cir. 1964).

Mr. Maher was entitled to reimbursement for his claimed unreimbursed employee expenses. Accordingly, Mr. Maher is not entitled to deduct any of these expenses.[4]

---

[4] Mr. Maher is not entitled to deduct his unreimbursed automobile expenses for an additional reason. Certain categories of expenses must satisfy the strict substantiation requirements of sec. 274(d) in order for a deduction to be allowed. The expenses to which sec. 274(d) applies include automobile expenses. Secs. 274(d)(4), 280F(d)(4)(a)(i) and (ii). We may not use the Cohan doctrine to estimate expenses covered by sec. 274(d). Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).
(continued...)

Failure To Timely File

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless such failure is due to reasonable cause and not due to willful neglect.  Section 7491(c) provides that the Commissioner shall bear the burden of production with respect to the liability of any individual for additions to tax.  "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty".  Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  If a taxpayer files a petition alleging some error in the determination of the penalty, the taxpayer's challenge will succeed unless the Commissioner produces evidence that the penalty is appropriate.  Swain v. Commissioner, supra at 364-365. The Commissioner, however, does not have the obligation to introduce evidence regarding reasonable cause or substantial authority.  Higbee v. Commissioner, supra at 446-447.

Mr. Maher stipulated that he did not file his return for

---

⁴(...continued)
To substantiate a deduction attributable to automobile expenses, a taxpayer must maintain adequate records or present corroborative evidence to show the following:  (1) The amount of the expense; (2) the time and place of use of the listed property; and (3) the business purpose of the use.  Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Mr. Maher did not maintain adequate records or present corroborative evidence regarding his automobile expenses.

1998. Mr. Maher testified that he knew that he was required to file a tax return for 1998 by April 15, 1999. We conclude that respondent satisfied his burden of production regarding this issue.

Mr. Maher claims he had reasonable cause for not filing because he was overwhelmed by his job, the custody battle for his children, and his divorce. Mr. Maher is an experienced tax professional. He knew of his obligation to file, and he simply chose to make other matters a priority over filing his return for 1998. He has to live with the consequences of his decision. Accordingly, we hold that Mr. Maher is liable for the addition to tax pursuant to section 6651(a)(1) for 1998.

To reflect the foregoing,

Decision will be entered under Rule 155.