T.C. Memo. 2002-71

UNITED STATES TAX COURT

DALE A. RINEHART AND JEANA L. YEAGER, f.k.a. JEANA L. RINEHART,
ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 20185-98, 15968-99,     Filed March 26, 2002.
15969-99, 7007-00.

<u>Frank C. Hider</u>, for petitioners.

<u>Stephen W. Brower</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>: Respondent determined deficiencies in and
penalties on petitioners' Federal income taxes as follows:

---

[1] Cases of the following petitioners are consolidated
herewith: Jeana L. Yeager, docket No. 15968-99; Dale A.
Rinehart, docket No. 15969-99; Jeana L. Yeager, docket No. 7007-
00.

| Docket No. | Year | Deficiency | Penalty Sec. 6662 |
|---|---|---|---|
| 20185-98 | 1994 | $46,894 | $9,379 |
| 15968-99 | 1995 | 29,264 | 5,853 |
| 15969-99 | 1995 | 28,765 | 5,753 |
| 15969-99 | 1996 | 53,869 | 10,774 |
| 7007-00 | 1996 | 27,032 | 5,406 |

In Rinehart v. Commissioner, T.C. Memo. 2002-9, we addressed the issue of whether Dale A. Rinehart's (Mr. Rinehart) horse breeding activity was an activity not engaged in for profit for 1994, 1995, and 1996.  The remaining issues for decision are:[2]  (1) Whether petitioners had cancellation of indebtedness income (COD income) for 1995; and (2) whether petitioners are liable for penalties pursuant to section 6662(a).[3]

FINDINGS OF FACT

We incorporate our findings in Rinehart v. Commissioner, supra, herein by this reference.

On June 21, 1991, Jeana L. Yeager (Ms. Yeager)[4] signed a loan application for $75,000 from Advanta Mortgage Corp. USA

---

[2]  The question of whether Jeana L. Yeager is entitled to relief pursuant to sec. 66 or 6015 is moot because in Rinehart v. Commissioner, T.C. Memo. 2002-9, we concluded that Mr. Rinehart engaged in his horse breeding activity for profit.

[3]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[4]  We use the term "Ms. Yeager" for convenience only.  The Court makes no findings regarding petitioners' marital status during and after the years in issue.

(Advanta).  Ms. Yeager was listed as the borrower, and John L. Babcock[5] was listed as a coborrower.  Ms. Yeager listed her address as 614 Sandydale Drive, Nipomo, California 93444 (the California address).  Ms. Yeager and Mr. Babcock signed a note dated June 21, 1991, in the amount of $75,000.  The interest rate was listed as 13.35 percent.  Ms. Yeager obtained this loan to take advantage of business opportunities related to Voyager.

To secure the $75,000 loan, Advanta filed a Deed of Trust dated June 21, 1991, with San Luis Obispo County, California, recording a second mortgage on the property located at the California address.  The deed of trust was signed by Ms. Yeager and notarized.

Sometime before May 1995, Advanta foreclosed on the property securing the $75,000 loan.  In 1995, Advanta took title to the property securing the $75,000 loan, sold the property securing the $75,000 loan, and discharged the principal balance outstanding on the $75,000 loan.

Advanta issued a Form 1099-C, Cancellation of Debt, for 1995 to Ms. Yeager.  The Form 1099-C reported May 17, 1995, as the

---

[5]  At the time, Mr. Babcock was Ms. Yeager's business manager at Voyager Aircraft, Inc. (Voyager).  Ms. Yeager became involved with Voyager in an attempt to fly an airplane around the world without stopping or refueling.  In December 1986, Richard G. Rutan and Ms. Yeager accomplished this feat, an aviation milestone, and as a result the airplane used to accomplish it hangs in the Smithsonian Air and Space Museum.

date of the cancellation of debt and $21,975 as the amount of debt canceled.

In or about January 1996, Advanta mailed the Form 1099-C to Ms. Yeager at her last known address. The address listed on Ms. Yeager's Form 1099-C was the California address. At the time Advanta mailed the Form 1099-C, Ms. Yeager lived in Texas. Ms. Yeager did not receive the Form 1099-C and was unaware of the Form 1099-C until she was contacted by the IRS during the audit of her 1994, 1995, and 1996 tax years.

In February 1996, Ms. Yeager filed for bankruptcy.

## OPINION

### I. Cancellation of Indebtedness

#### A. Burden of Proof

Generally, the taxpayers bear the burden of proof.[6] Rule 142(a)(1). As a preliminary matter, petitioners argue that the burden of proof is on respondent to establish that petitioners had COD income because respondent issued notices of deficiency based solely upon a Form 1099 issued by Advanta. Petitioners argue that Portillo v. Commissioner, 932 F.2d 1128 (5th Cir. 1991), revg. T.C. Memo. 1990-68, and 988 F.2d 27 (5th Cir. 1993), revg. T.C. Memo. 1992-99, places the burden on respondent.

Petitioners make this argument for the first time on brief.

---

[6] Sec. 7491 is not applicable to these cases. Rinehart v. Commissioner, T.C. Memo. 2002-9, n.20.

Generally, we will not consider issues that are raised for the first time at trial or on brief.  Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975).  Accordingly, we shall not consider whether to place the burden of proof upon respondent.[7]

B.    General Rule

Generally, a taxpayer must recognize income from the discharge of indebtedness.  Sec. 61(a)(12); United States v. Kirby Lumber Co., 284 U.S. 1 (1931).  The documentary evidence in addition to the Form 1099-C and the testimony of a representative of Advanta established:  (1) Ms. Yeager borrowed $75,000 from Advanta; (2) she did not repay the $75,000 loan; (3) Advanta foreclosed on the property securing the $75,000 loan; (4) Advanta sold the property securing the $75,000 loan; (5) Advanta discharged the indebtedness of Mr. Babcock and Ms. Yeager; and (6) Advanta issued Ms. Yeager a Form 1099-C reporting the amount of canceled debt as $21,975.  On the basis of the evidence in the record, we conclude that in 1995 Ms. Yeager had $21,975 of COD income.

---

[7]  The resolution of whether Ms. Yeager had COD income does not depend on which party has the burden of proof.  We resolve this issue on the basis of a preponderance of evidence in the record.

C.    Nonreceipt of Form 1099

Petitioners claim that because Ms. Yeager did not receive the Form 1099-C, Ms. Yeager did not realize COD income.  We disagree.  "The moment it becomes clear that a debt will never have to be paid, such debt must be viewed as having been discharged."  Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). The nonreceipt of a Form 1099 does not convert taxable income into nontaxable income.  Vaughan v. Commissioner, T.C. Memo. 1992-317, affd. without published opinion 15 F.3d 1095 (9th Cir. 1993).

Advanta prepared a Form 1099-C reporting May 17, 1995, as the date it canceled Ms. Yeager's indebtedness and $21,975 as the amount of debt canceled.  Accordingly, we hold that Ms. Yeager realized the COD income in 1995.

D.    Insolvency

Petitioners also claim that Ms. Yeager was insolvent when Advanta forgave the debt.  Petitioners assert that Ms. Yeager had liabilities close to $32,000 from creditors' claims (other than Advanta) while at the same time she had no more than $1,000 in assets and earned only $400 a month.  Petitioners also argue that they were not married at the time of the cancellation of indebtedness; therefore, Mr. Rinehart's assets are irrelevant in determining whether Ms. Yeager was insolvent.

The Internal Revenue Code provides an exception to the

recognition of COD income in cases where the discharge occurs when the taxpayer is insolvent. Sec. 108(a)(1)(B); see also Babin v. Commissioner, 23 F.3d 1032, 1035 (6th Cir. 1994), affg. T.C. Memo. 1992-673. For purposes of section 108, "insolvent" means the excess of liabilities over the fair market value of assets. Sec. 108(d)(3). Whether the taxpayer is insolvent shall be determined on the basis of the taxpayer's assets and liabilities immediately before the discharge. Id.

Texas is a community property State. Tex. Fam. Code Ann. secs. 3.001-3.309 (Vernon 2002); Lange v. Phinney, 507 F.2d 1000, 1005 (5th Cir. 1975). Thus, if petitioners were married, we must include Ms. Yeager's share of community assets and liabilities in determining whether she was insolvent. We need not decide petitioners' marital status for 1995 for Federal income tax purposes, however, because the evidence fails to establish the amount of Ms. Yeager's individual assets and liabilities as of the date of the discharge of indebtedness, in 1995, by Advanta.

Petitioners' figure of $32,000 in liabilities is taken from the bankruptcy petition filed in February 1996. This figure is not from the same year as, nor immediately before, the cancellation of indebtedness.

Petitioners also rely on their own testimony to establish that Ms. Yeager was insolvent. The Court is not required to accept petitioners' unsubstantiated testimony. Wood v.

Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). We found petitioners' testimony on this issue to be general, vague, conclusory, and/or questionable in certain material respects. Under the circumstances presented here, we are not required to, and do not, rely on petitioners' testimony to establish whether Ms. Yeager was insolvent. Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Accordingly, we conclude that at the time of the discharge of indebtedness Ms. Yeager was not entitled to the benefits provided by section 108(a)(1)(B).

E. Mr. Rinehart's Liability Regarding the Canceled Debt

In the notice of deficiency issued to Mr. Rinehart for 1995, respondent determined "in accordance with community property laws" that Mr. Rinehart was liable for $10,987 of COD income. Petitioners claim that pursuant to Texas law Ms. Yeager's COD income was not income to Mr. Rinehart as the cancellation of indebtedness related to Ms. Yeager's separate property and did not give rise to community income. Again, we need not decide petitioners' marital status for 1995 for Federal income tax purposes because, although respondent made an adjustment in Mr. Rinehart's separate notice of deficiency for 1995 regarding Ms. Yeager's COD income, in his briefs respondent did not address the

issue of Mr. Rinehart's liability for Ms. Yeager's COD income.

Where the Commissioner fails to address an issue in his opening or reply brief, we may deem that he waived that issue. Levert v. Commissioner, T.C. Memo. 1989-333, affd. without published opinion 956 F.2d 264 (5th Cir. 1992). Therefore, we conclude that respondent has abandoned this issue. Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

## II. Section 6662 Penalties

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax due to negligence or disregard of rules or regulations.[8] Sec. 6662(b). Section 6664(c)(1) provides that no accuracy-related penalty shall be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

With regard to the horse breeding activity, we previously concluded that Mr. Rinehart engaged in the activity with the intent of making a profit within the meaning of section 183.

_____

[8] Sec. 7491(c) is not applicable to these cases. See supra note 6.

Rinehart v. Commissioner, T.C. Memo. 2002-9.  Respondent conceded that if the Court determined the horse breeding activity was engaged in for profit, then petitioners substantiated the expenses deducted for the horse breeding activity.  Accordingly, there is no underpayment of tax attributable to the horse breeding activity and thus no accuracy-related penalty associated with the horse breeding activity.

With regard to the COD income, we do not believe imposition of the accuracy-related penalty is appropriate.  Ms. Yeager did not receive a Form 1099 reporting the COD income.  She was unaware of the Form 1099-C until she was contacted by the IRS during the audit of her 1994, 1995, and 1996 tax years.  Accordingly, we hold the she is not liable for the accuracy-related penalty attributable to the COD income.

Petitioners failed to present evidence to establish that they acted with reasonable cause and in good faith with regard to any of the other issues, including those they conceded.[9]  Accordingly, we hold that petitioners are liable for the accuracy-related penalties as to those issues.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not

---

[9] Petitioners make assertions in their briefs regarding these other issues; however, assertions on brief are not evidence.  Rule 143(b).

mentioned above, we conclude they are irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.