T.C. Memo. 2016-36

UNITED STATES TAX COURT

BENJAMIN J. ASHMORE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 1146-12.                    Filed March 2, 2016.

Benjamin J. Ashmore, pro se.

<u>Robert W. Mopsick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined a deficiency of $8,601 in

petitioner's Federal income tax and an accuracy-related penalty of $3,387 pursuant

_____

[*]This opinion replaces our previously filed opinion <u>Ashmore v.
Commissioner</u>, T.C. Memo. 2013-137, filed May 30, 2013, and withdrawn on July
2, 2013 (prior opinion).

[*2] to section 6662(a) for the 2009 tax year.[1] Before trial respondent conceded that petitioner did not fail to report $4,200 of cancellation of indebtedness income in 2009. During trial petitioner conceded that he failed to report $20,567 of wage income for 2009. Accordingly, the only issue remaining to be decided at the time of trial was petitioner's liability for the section 6662(a) accuracy-related penalty for the 2009 tax year. Trial was held on October 2, 2012.

On May 30, 2013, the Court issued its prior opinion. Before the Court's filing of its prior opinion, petitioner on April 8, 2013, filed for bankruptcy without informing the Court. Upon receiving notice of petitioner's bankruptcy filing, the Court, on July 2, 2013, issued an order withdrawing its prior opinion. On November 18, 2013, petitioner was granted a discharge, and on November 22, 2013, petitioner's bankruptcy case was closed.

On April 2, 2014, respondent filed a motion for summary judgment, which we treat as a motion for partial summary judgment, since, even if we grant respondent's motion as to the question of our jurisdiction over whether petitioner's 2009 deficiency was discharged in bankruptcy, we must still decide

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended and in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] whether the 2009 deficiency was correct.  Eight days later on April 10, 2014, petitioner filed his motion for summary judgment.  Each party's motion addresses whether petitioner's liability for a 2009 deficiency was discharged in bankruptcy.  The issues we must decide are:  (1) whether petitioner is liable for the section 6662(a) accuracy related penalty (the issue addressed at trial in the instant case); and (2) the effect of petitioner's bankruptcy on the instant case.

## FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated.  The parties' stipulated facts are incorporated in this opinion by reference and are found accordingly.  Petitioner resided in New Jersey when he filed his petition.

Beginning in 2004, petitioner was employed as a senior policy analyst for the U.S. Department of Housing and Urban Development (HUD).  In that position, he regularly dealt with numbers, formulas, and details.  Petitioner has earned two master's degrees, one in public policy and the other in business administration.

2008 Deficiency

On August 6, 2008, HUD retained Accounting Resources, Inc. (Accounting Resources), to manage payroll administration and staffing.  Petitioner failed to report a portion of the wages he earned at HUD.  Presumably, the missing wages

[*4] corresponded with the period in which Accounting Resources managed the payroll.

On October 18, 2010, respondent sent petitioner a notice of deficiency for his 2008 tax year, determining an income tax deficiency and an accuracy-related penalty pursuant to section 6662(a). On January 21, 2011, petitioner filed a petition with this Court challenging respondent's determinations. On December 19, 2011, pursuant to an agreement between the parties, this Court entered an order and decision deciding that petitioner owed a deficiency of $5,325 for his 2008 tax year but did not owe an accuracy-related penalty pursuant to section 6662(a) for the 2008 tax year (2008 decision).

2009 Deficiency

Sometime during January 2009 petitioner changed his residence from Brooklyn, New York, to Ramsey, New Jersey. On February 20, 2009, petitioner contacted Eliot Lugo, the principal of Accounting Resources, to ascertain how to change his residence from New York to New Jersey for purposes of State withholding taxes. Mr. Lugo replied that he would make the necessary changes. Petitioner reiterated that his withholdings for State and local tax purposes should change to reflect his move from New York to New Jersey.

**[*5]**   During the 2009 tax year petitioner earned $117,464 in wages from his employment at HUD.  Petitioner earned more during 2009 than during any previous year of his employment with HUD.  Petitioner estimated that in prior years he had earned between $57,000 and $81,000 annually.

Respondent received three separate Forms W-2, Wage and Tax Statement, for petitioner's wages earned during 2009.  Accounting Resources issued two of the Forms W-2.  The first Form W-2 reported wages of $9,319 and income tax withholdings of $391, $299, and $121 to the State of New York, the City of New York, and the Federal Government, respectively (first Form W-2).  The second Form W-2 reported wages of $20,567 and income tax withholdings of $570 and $170 to the State of New Jersey and the Federal Government, respectively (second Form W-2).  A third Form W-2, issued by CGI Federal, Inc., reported wages of $87,578 and income tax withholdings of $4,892 and $8,684 to the State of New Jersey and the Federal Government, respectively.

On his 2009 Federal income tax return, petitioner reported wages of $96,897 and Federal income tax withholding of $17,990.  In other words, petitioner failed to report the wage income shown on the second Form W-2 and overstated his Federal withholdings by $9,015.

**[*6]**   On October 11, 2011, roughly two months before the 2008 decision was entered, respondent sent petitioner a notice of deficiency for the 2009 tax year. Respondent determined petitioner's income tax deficiency to be $8,601 and proposed an accuracy-related penalty pursuant to section 6662(a) of $3,387.  On January 12, 2012, petitioner filed a timely petition.  As previously noted, the parties subsequently agreed to an increase in petitioner's taxable wages, though less than that determined in the notice of deficiency, and a trial was held in October 2012 to decide whether petitioner was liable for the section 6662(a) penalty.  Also as previously noted, after the trial but before the Court issued the prior opinion, petitioner filed for bankruptcy.

In his bankruptcy petition, petitioner listed a 2009 tax deficiency as an unsecured nonpriority claim on Schedule F, Creditors Holding Unsecured Nonpriority Claims.  On August 23, 2013, Robert Mopsick, counsel for respondent, filed in petitioner's bankruptcy proceeding a notice of appearance and request for service.  Respondent did not file a proof of claim in petitioner's bankruptcy case, and the bankruptcy court's docket sheet does not show any motion or hearing the purpose of which would be to determine petitioner's tax liability for 2009.

[*7]    On November 18, 2013, petitioner was granted a discharge under the Bankruptcy Code.  See 11 U.S.C. sec. 727 (2012).  On November 22 and December 2, 2013, the parties informed this Court of petitioner's discharge and the closing of petitioner's bankruptcy case.  Respondent and petitioner filed their motions for summary judgment on April 2 and April 10, 2014, respectively.

Respondent contends that this Court does not have jurisdiction to determine whether petitioner's liability for his 2009 deficiency was discharged in bankruptcy, that there is no final determination by the bankruptcy court that is res judicata as to the deficiency in the instant case, and that this Court now has jurisdiction to determine the merits of the instant case.  Petitioner contends that his liability for his 2009 deficiency was discharged in bankruptcy, that respondent's authority stating that this Court has no jurisdiction to determine dischargeability is not relevant, and that the November 18, 2013, general discharge is res judicata in the instant case.  Additionally, the parties dispute petitioner's liability for the accuracy-related penalty under section 6662(a) for the 2009 tax year.

OPINION

Jurisdiction

The Tax Court has jurisdiction to redetermine a taxpayer's Federal tax liabilities if the taxpayer files a timely petition in response to a valid notice of

**[\*8]** deficiency.  Secs. 6212 and 6213; <u>Gustafson v. Commissioner</u>, 97 T.C. 85, 89 (1991).  Upon the filing of a petition in bankruptcy court by a petitioner in the Tax Court, the Tax Court case must be stayed.  11 U.S.C. sec. 362(a)(8) (2012).

The Bankruptcy Code explicitly provides the bankruptcy court with concurrent jurisdiction to adjudicate "the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax", including those pending review by the Tax Court.  <u>Id.</u> sec. 505(a)(1).  If the bankruptcy court decides the tax issue, then its decision is binding upon this Court under principles of res judicata.[2] <u>Freytag v. Commissioner</u>, 110 T.C. 35, 40 (1998).  If the bankruptcy court does not decide the issue, then upon the lifting of the stay the Tax Court may once again exercise its concurrent jurisdiction to adjudicate the tax issue.  11 U.S.C. sec. 362(c)(2); <u>see</u> <u>Neilson v. Commissioner</u>, 94 T.C. 1, 8 (1990) ("Unless the [automatic] stay is removed by an order of the bankruptcy court, it continues until the earliest of the case closing, case dismissal, or the time a discharge is granted.").

In contrast, the Tax Court does not have jurisdiction, in a deficiency proceeding, to adjudicate whether a tax, fine, penalty, or other addition to tax was

---

[2]The bankruptcy court is not required to adjudicate a tax issue, as 11 U.S.C. sec. 505(a)(1) (2012) provides that the court "may" determine the amount or legality of any tax-related amounts.

**[\*9]** discharged under the Bankruptcy Code.[3]  Neilson v. Commissioner, 94 T.C. at

9; Graham v. Commissioner, 75 T.C. 389, 399 (1980); Fotochrome, Inc. v.

Commissioner, 57 T.C. 842, 847 (1972).  Instead, a taxpayer may reopen a closed

bankruptcy proceeding for the purpose of deciding the dischargeability issue.[4]  11

U.S.C. sec. 350; see Allison v. Commissioner, 97 T.C. 544, 547-548 (1991);

Neilson v. Commissioner, 94 T.C. at 9.

Petitioner's 2009 deficiency was not adjudicated in the bankruptcy court.

Respondent did not file a proof of claim in petitioner's bankruptcy case, and there

is no evidence of an adjudication under 11 U.S.C. sec. 505(a)(1).  Instead,

petitioner contends that his November 18, 2013, discharge included his 2009

liability.  However, the general discharge is not a judgment on the merits of

petitioner's 2009 tax issue and does not confirm that any 2009 tax liability was

discharged.  See Neilson v. Commissioner, 94 T.C. at 9; Graham v. Commissioner,

---

[3]However, in a lien or levy proceeding, this Court does have jurisdiction to decide whether unpaid income tax liabilities have been discharged in bankruptcy. Washington v. Commissioner, 120 T.C. 114, 121 (2003).

[4]Although we do not have the authority to determine dischargeability, we do note that it is unclear how the 2009 deficiency under consideration in the instant case could have been discharged, given that it had not yet been assessed, see 11 U.S.C. sec. 507(a)(8)(A)(ii) (2012), and that the 2009 return was last due within three years (April 15, 2010) before the date of the filing of the petition (April 12, 2013), see id. cl. (i).

**[*10]** 75 T.C. at 399. There is, therefore, no decision that is binding upon this Court. See Neilson v. Commissioner, 94 T.C. at 9. Moreover, as explained above, neither the Bankruptcy Code nor the Internal Revenue Code provides the Tax Court with jurisdiction to decide whether petitioner's 2009 deficiency has been discharged in the instant case. We will therefore grant respondent's partial motion for summary judgment and deny petitioner's motion for summary judgment on the bankruptcy issue.

However, now that the automatic stay has been lifted, the Tax Court does have jurisdiction to adjudicate petitioner's 2009 tax deficiency issue. Accordingly, we address the merits of the petition and respondent's determination of a penalty pursuant to section 6662(a) for petitioner's 2009 tax year.

<u>Penalty Analysis</u>

Section 6662(a) and (b)(2) imposes an accuracy-related penalty of 20% of any underpayment that is attributable to a "substantial understatement" of income tax. An "understatement" is the excess of the amount of tax required to be shown on the return over the amount of tax that is actually shown on the return. Sec. 6662(d)(2)(A). An understatement of income tax is substantial if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

**[\*11]** Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty. Sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). Once the Commissioner has met the burden of production, the taxpayer bears the burden of proving that the penalty is inappropriate because of substantial authority under section 6662(d)(2)(B)(i) or reasonable cause under section 6664. <u>See</u> Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447.

On his 2009 tax return, petitioner reported tax due of $2,616. Before trial respondent contended that petitioner was required to report tax due of $10,900. However, respondent's calculation did not account for respondent's concession of cancellation of indebtedness income of $4,200. Consequently, the exact amount of petitioner's understatement will depend on Rule 155 computations, which we will order. To the extent that those computations establish that petitioner has a substantial understatement of income tax, respondent has met his burden of production.[5] <u>See</u> <u>Bogue v. Commissioner</u>, T.C. Memo. 2011-164, 2011 WL

---

[5]For the first time, on brief, and after trial, respondent contends that "petitioner's omission of income and his overstatement of withholding

(continued...)

[*12] 2709818, at *17, <u>aff'd</u>, 522 F. App'x 169 (3d Cir. 2013); <u>Prince v.</u>

<u>Commissioner</u>, T.C. Memo. 2003-247, 2003 WL 21957994, at *5.

Section 6664(c)(1) provides that the accuracy-related penalty shall not apply

to any portion of an underpayment if it is shown that, with respect to that portion,

there was reasonable cause for the taxpayer's position and the taxpayer acted in

good faith. The determination of whether a taxpayer acted with reasonable cause

and in good faith within the meaning of section 6664(c)(1) is made on a case-by-

case basis, taking into account all of the pertinent facts and circumstances. Sec.

1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the

taxpayer's effort to ascertain his proper tax liability for the year. <u>Id.</u>

"Circumstances that may indicate reasonable cause and good faith include an

honest misunderstanding of fact or law that is reasonable in light of all of the facts

and circumstances, including the experience, knowledge, and education of the

taxpayer." <u>Id.</u> Taxpayers demonstrate reasonable cause when they exercise

---

⁵(...continued)
demonstrate negligence in the preparation of his 2009 tax return". However,
theories raised for the first time on brief are untimely and will not be considered.
<u>Rollert Residuary Trust v. Commissioner</u>, 80 T.C. 619, 636 (1983), <u>aff'd on other</u>
<u>issues</u>, 752 F.2d 1128 (6th Cir. 1985); <u>Markwardt v. Commissioner</u>, 64 T.C. 989,
997 (1975); <u>Estate of Mandels v. Commissioner</u>, 64 T.C. 61, 73 (1975).
Accordingly, we will not address the issue of whether petitioner was negligent in
the preparation of his 2009 tax return.

[*13] ordinary business care and prudence. <u>Richardson v. Commissioner</u>, 125 F.3d 551, 558 (7th Cir. 1997), <u>aff'g</u> T.C. Memo. 1995-554.

At trial petitioner contended that he acted with reasonable cause and in good faith because he reported all of the wages for which he received a Form W-2. He explained that Accounting Resources mailed only one Form W-2 to him; that he had no reason to suspect there was a mistake until the conclusion of his 2008 tax year proceeding; that his fluctuating annual income made it difficult to prepare his tax returns but that the amount reported for the 2009 tax year was within range of his typical earnings; and that a contentious divorce prevented him from exercising more diligence in his tax return preparation.

We conclude that any error by Accounting Resources does not provide reasonable cause because petitioner should have known of the missing second Form W-2. We have held that the nonreceipt of a tax document, e.g., a Form W-2, does not excuse a taxpayer from his or her duty to report the income. <u>See, e.g.</u>, <u>Du Poux v. Commissioner</u>, T.C. Memo. 1994-448 (nonreceipt of Forms W-2 and 1099-MISC). Moreover, we have held that nonreceipt of tax documents does not constitute reasonable cause in answer to a section 6662(a) accuracy-related penalty. <u>See</u> <u>Deas v. Commissioner</u>, T.C. Memo. 2000-204 (nonreceipt of

**[\*14]** Schedule K-1 did not constitute reasonable cause where taxpayer failed to report partnership income).

Additionally, petitioner's reliance on the first Form W-2 did not provide reasonable cause. A taxpayer's reliance on erroneous information reported on a Form W-2 may indicate reasonable cause and good faith, but only if the taxpayer did not know or have reason to know that the information was incorrect. Sec. 1.6664-4(b)(1), Income Tax Regs. The missing amount of $20,567 is sufficiently large that petitioner should have been put on notice that he was reporting only 82% of his income. Accordingly, we conclude that petitioner has not shown that he did not know or have reason to know that the Form W-2 was incorrect.

We also disagree with petitioner's contention that the earliest he could have known about the missing second Form W-2 was on December 19, 2011, at the conclusion of this Court's proceeding for petitioner's 2008 tax year and after he had already received a notice of deficiency for his 2009 tax year. On February 20, 2009, petitioner directed Accounting Resources to change the State of his State tax withholding from New York to New Jersey. Petitioner has not addressed why, when he received a 2009 Form W-2 from Accounting Resources that did not include tax withholding for New Jersey, he failed to consider either that Accounting Resources made a mistake or that an additional Form W-2 was

**[\*15]** forthcoming. Moreover, we conclude that petitioner has not shown why receipt of the notice of deficiency for his 2008 tax year and subsequent inspection of his 2008 tax return were insufficient to alert him to double-check the 2009 Forms W-2 issued by Accounting Resources and wages reported for his 2009 tax year.

Additionally, petitioner has not shown that it was impossible for him to calculate his correct annual wages. At trial petitioner contended that there was no reason for him to question the earnings as reported to him on the Forms W-2 he received because his earnings fluctuated from year to year and the reported amount was within the range of his typical earnings. We are not persuaded by petitioner's argument. The amount he earned during 2009 (i.e., $117,464) significantly exceeded the approximately $57,000 to $81,000 that he had received in prior years. We conclude that the fact that his earnings were not predictable from year to year did not prove that petitioner is entitled to rely on Forms W-2 that were sent to him; instead, we conclude that the variations in his earnings were sufficient cause for him to compare earnings reported on the Forms W-2 with bank records, paycheck stubs, or paycheck histories, all of which were available to him, to ensure that amounts reported on those Forms W-2 matched the actual amounts that he had received. Accordingly, we conclude that petitioner's inability to

**[\*16]** project his earnings before they were received is insufficient to prove reasonable cause for failing to report earnings actually received.

Petitioner also contended at trial that he was unable to devote the time necessary to prepare his 2009 tax return because of his divorce proceedings. We have held that a taxpayer does not have reasonable cause where he chose to make his divorce a greater priority than the proper filing of taxes. See, e.g., Cayabyab v. Commissioner, T.C. Memo. 2012-89 (finding no reasonable cause for late filing); Maher v. Commissioner, T.C. Memo. 2003-85 . Accordingly, we conclude that petitioner's divorce proceedings do not constitute reasonable cause in the instant case.

Finally, we must take into consideration petitioner's experience and education, which include a master's degree in business administration and a position as a senior policy analyst for HUD in which he would regularly encounter numbers, formulas, and details. Upon due consideration of his background and the reasons discussed above, we conclude that petitioner has not shown that he made a good-faith effort to assess his proper tax liability for his 2009 tax year. Accordingly, we hold that, if the Rule 155 computations establish that petitioner has a substantial understatement of income tax, he is liable for the section 6662(a) and (b)(2) accuracy-related penalty for his 2009 tax year.

**[*17]** In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered under Rule 155</u>.