149 T.C. No. 9

UNITED STATES TAX COURT

STEVEN A. MCGUIRE AND ROBIN L. MCGUIRE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17312-16.                          Filed August 28, 2017.

Ps received an advance premium tax credit under the
Affordable Care Act. That credit was paid directly to a health
insurance provider to reduce the amount of the premium to be paid by
Ps. As a result of a change in financial circumstances, Ps ultimately
were not entitled to the premium tax credit. After the close of the tax
year, Ps did not receive a Form 1095-A, Health Insurance
Marketplace Statement. Ps did not report the excess tax credit as an
increase to tax on their return.

<u>Held</u>: The Court does not have the equitable power to override
the clear and unambiguous language of the Internal Revenue Code.
Excess premium assistance credits are an increase in tax. I.R.C. sec.
36B(f)(2).

<u>Held</u>, <u>further</u>, Ps are not liable for an addition to tax.

Steven A. McGuire and Robin L. McGuire, pro se.

Emma S. Warner, for respondent.

OPINION

Background

BUCH, Judge: Mr. and Mrs. McGuire applied for and received benefits under what is commonly referred to as the Affordable Care Act. Leading up to 2014, the year in issue, Mr. McGuire was drawing roughly $800 per week from his parts and service business, and Mrs. McGuire was not working. On the basis of their household income, Covered California, a health insurance exchange created under the Affordable Care Act, determined that the McGuires were eligible for an advance premium assistance credit of $591 per month to be applied to their monthly health insurance premium, for a total annual credit of $7,092. The McGuires enrolled in the Blue Shield Silver 70 PPO plan,[1] with a monthly premium of $1,181.97. After application of the advance premium assistance credit, the McGuires were responsible for only $590.97 of that premium.

---

[1]The ACA requires insurance plans available for purchase through the health exchanges to be categorized by the level of coverage they provide. Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, sec. 1301(d)(1), 124 Stat. at 167 (2010). The plan categories from lowest level to highest level of coverage are bronze, silver, gold, and platinum.

After the eligibility determination but still in 2013, Mrs. McGuire began working at a job that paid her $600 per week. She promptly notified Covered California, acknowledging that this amount "needs to be included in our annual income." This change of income was significant in that 400% of the Federal poverty line for a family of two residing in California at the time was $62,040, and Mrs. McGuire's new job was almost certain to put the McGuires over that limit.

Several months later, Covered California acknowledged the change in household income, sending a letter dated June 14, 2014, advising the McGuires that they did not qualify for an Enhanced Silver Plan because their household income was too high. That same letter advised the McGuires:

> The Covered California website shows how much your premium assistance lowers your premium. Your premium assistance is based on our records and the income you put on your application that you expect this year. If you take the full premium assistance to pay the premium, and your income is higher, you may have to pay some back at tax time.

It is unclear from the record whether the McGuires would have been permitted to switch to a different, lower cost plan, and the letter from Covered California is silent on the subject. Even if the letter had spoken to that issue, it wouldn't have mattered; the McGuires never received the letter.

What happened to that letter is unclear. The records from Covered California that were provided in this case are incomplete. But according to the records in evidence, "during Covered California's first open enrollment period, Covered California was so busy that it was not uncommon that changes were not implemented."[2] What the record makes clear is that the McGuires made repeated efforts to get Covered California to take into account the change in household income, but it never did so.

These missed communications had lingering effects. As part of the same communications with Covered California, the McGuires also attempted to get their address updated. As with the update to the McGuires' earnings, Covered California did not update the McGuires' address. At the end of the year, health insurance exchanges, such as Covered California, issue an informational

[2]In re Robin McGuire, No. ACA-16139028 (Cal. Dep't of Health Care Servs., Sept. 26, 2016) (ALJ hearing denying for lack of jurisdiction appeal regarding Covered California's failure to redetermine eligibility after reported change in income). The McGuires filed an administrative appeal with Covered California disputing a notice informing them that they did not qualify for an Enhanced Silver Plan. In a subsequent hearing before an administrative law judge, a representative of Covered California testified as to the delays in updating its records. Ultimately, the appeal was denied on procedural grounds: "The Administrative Law Judge lacks jurisdiction to decide an issue involving an error on the part of Covered California for failure to recalculate the appellant's eligibility for APTC after the appellant reported a change in income in January 2014."

statement, Form 1095-A, Health Insurance Marketplace Statement, to anyone who has received coverage through the exchange. See sec. 36B(f)(3); sec. 1.36B-5, Income Tax Regs. Taxpayers use Forms 1095-A to calculate their premium tax credits. The McGuires did not receive a Form 1095-A.

When it came time to file their 2014 Federal income tax return, the McGuires checked the box on Form 1040, U.S. Individual Income Tax Return, line 61, which reads "Health care: individual responsibility (see instructions) Full-year coverage". By checking this box, the McGuires informed the Internal Revenue Service that they had insurance coverage throughout the year. Had they not, the instructions for Form 1040, line 61 would have directed them to the instructions for Form 8965, Health Coverage Exemptions, which would have showed them how to calculate their "shared responsibility payment." See 2014 Instructions for Form 8965, at 6 "Shared Responsibility Payment Worksheet".

On their return the McGuires left blank line 69, labeled "Net premium tax credit. Attach Form 8962." The instructions for Form 1040, line 69 (found at page 70) are silent as to how this line might relate to an advance premium tax credit. Those instructions read, in full:

**Line 69**

**Net Premium Tax Credit**
You may be eligible to claim the premium tax credit if you, your spouse, or a dependent enrolled in health insurance through the Health Insurance Marketplace.  The premium tax credit helps pay for this health insurance.  Complete Form 8962 to determine the amount of your premium tax credit, if any.  Enter the amount, if any, from Form 8962, line 26.  See Pub. 974 and the instructions for Form 8962 for more information.

Following the cross-reference to the instructions to Form 8962, Premium Tax Credit, might lead a reader to this passage on page 1 of those instructions:

**Advance payment of the premium tax credit (APTC).**  APTC is a payment made for coverage during the year to your insurance provider that pays for part or all of the premiums for the coverage of you or an individual in your tax family.  Your APTC eligibility is based on the Marketplace's estimate of the PTC you will be able to take on your tax return.  If APTC was paid for you or an individual in your tax family, you must file Form 8962 to reconcile (compare) this APTC with your PTC.  If the APTC is more than your PTC, you have excess APTC and you must repay the excess, subject to certain limitations.  If your PTC is more than the APTC, you can reduce your tax payment or increase your refund by the difference.

There is no evidence in the record indicating that the McGuires, who retained a tax return preparer, were made aware of these various instructions.  Nowhere on their return did they report their advance premium tax credit of $7,092.

This omission caught the attention of the Internal Revenue Service.  On August 8, 2016, the Commissioner issued a notice of deficiency to the McGuires.

The only tax adjustment in that notice of deficiency was to disallow the $7,092 advance premium tax credit, the effect of which was to increase their tax liability in the amount of that disallowed credit. The Commissioner also determined an accuracy-related penalty. While residing in California, the McGuires petitioned.

## Discussion

There is very little in dispute in this case; both the facts and the law are clear, and the parties seem to be in agreement as to how the law applies to the facts. Before turning to the actual dispute, we will summarize the law and how it applies to the facts.

The Affordable Care Act

A stated purpose of the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. 119 (2010), is to "improve access to and the delivery of health care services for all individuals, particularly low income, underserved, uninsured, minority, health disparity and rural populations". Id. sec. 5001, 124 Stat. at 588.[3] To achieve this goal, the statutory scheme, among other things, mandates that individuals maintain health coverage, creates health insurance exchanges to provide that coverage, and offers a refundable tax credit to

---

[3]All section references are to the Internal Revenue Code in effect for the year in issue, unless otherwise indicated.

offset the cost of health insurance for those who qualify.  Id. sec. 1501, 124 Stat. at 242; sec. 5000A; ACA sec. 1401, 124 Stat. at 213; sec. 36B; ACA sec. 1311, 124 Stat. at 173.  The individual mandate is enforced by the imposition of a penalty on individuals who do not maintain qualifying health insurance coverage.  Sec. 5000A; ACA sec. 1501.  The exchanges are health insurance markets that are administered by either State governments or the Federal Government.  ACA sec. 1321(c), 124 Stat. at 186 (codified at 42 U.S.C. sec. 18041(c) (Supp. V 2006)).  And the tax credit is referred to as the premium assistance tax credit.  Sec. 36B.

The Premium Assistance Tax Credit

The premium assistance tax credit is available to households with incomes between 100% and 400% of the Federal poverty line.  Sec. 36B(c)(1)(A).  Household income is specifically defined for this purpose.  Sec. 1.36B-1(e)(2), Income Tax Regs.  The Federal poverty line is defined by the Office of Management and Budget and is updated by the Secretary of Health and Human Services.  Sec. 36B(d)(3); 42 U.S.C. sec. 1397jj(c)(5) (Supp. V 2006); 42 U.S.C. sec. 9902(2) (2006).  During 2014 the Federal poverty line was $15,510 for a two-person household in California, and 400% of the Federal poverty line was $62,040.  To qualify for the credit one must be a citizen or national of the United States or lawfully present in the United States.  Sec. 36B(e)(2).  Eligibility for the

credit is also contingent on enrollment in a qualified health plan. Sec. 36B(b)(2)(A).

A qualified health plan is defined as either an individual health insurance plan or a group health plan that meets a range of statutory requirements. ACA sec. 1301, 124 Stat. at 162 (codified at 42 U.S.C. sec. 18021 (Supp. V 2006)). In the case of a qualified individual health plan, the plan must be made available for purchase on an exchange, must meet minimum coverage requirements, and must be offered by an insurer who is licensed in the State where the plan is offered and is in good standing to offer health insurance under applicable State and Federal standards. Id.; ACA sec. 1302, 124 Stat. at 163 (codified at 42 U.S.C. sec. 18022 (Supp. V 2006)). Plans are categorized based on the level of coverage they provide. ACA sec. 1302(d)(1), 124 Stat. at 167. The coverage levels from lowest to highest are bronze, silver, gold, and platinum. Id.

The amount of the credit is based on both the taxpayer's income and the cost of the benchmark qualified health plan. Sec. 36B; sec. 1.36B-3(f), Income Tax Regs. The benchmark qualified health plan is the "second lowest cost silver plan of the individual market in the rating area in which the taxpayer resides." Sec. 36B(b)(3)(B); sec. 1.36B-3(f), Income Tax Regs. Credit recipients are required to pay a percentage of their household income toward their insurance

premiums. Sec. 36B(b)(3). The premium assistance tax credit is equal to the amount of the excess cost of the benchmark qualified health plan over the taxpayer's required contribution. Sec. 1.36B-3(g), Income Tax Regs. The percentage used to determine the taxpayer's share of the premiums varies, with lower income households paying a smaller percentage of their household income toward their premiums. Sec. 36B(b)(3)(A)(i). The percentages range from 2% to 9.5%. Id. The amount of the credit is the lesser of either the monthly premium for the qualified health plan or the excess of the monthly premium for the benchmark qualified health plan over one-twelfth of the taxpayer's required share of the annual premium. Sec. 36B(b)(2); sec. 1.36B-3(g), Income Tax Regs.

The ACA tasks the Secretary of Health and Human Services with establishing a program to determine whether applicants are eligible for premium assistance tax credits and the amounts of those credits. ACA sec. 1411(a)(2), 124 Stat. at 224. The exchange is responsible for collecting necessary eligibility information such as household income and family size from those seeking premium assistance tax credits. Id. sec. 1411(c)(1), 124 Stat. at 226. Once collected, the exchange must transmit that information to the Secretary of Health and Human Services for verification. Id. Once verified, the Secretary of Health

and Human Services must notify the exchange, and the individual's eligibility to enroll is satisfied.  Id. sec. 1411(e)(2), 124 Stat. at 227.

Advance Premium Tax Credits

If someone cannot afford monthly health insurance premiums during the year, doling out those tax credits after the end of the year is of little use.  For this reason, the ACA allows for the advance payment of the premium assistance tax credit "in order to reduce premiums payable by individuals eligible for [premium assistance tax credits]".  Id. sec. 1412(a)(3), 124 Stat. at 231-232 (codified at 42 U.S.C. 18082).  The "advance premium tax credits" are paid directly to the insurer in the form of monthly payments based on advance eligibility determinations.  Id. sec. 1412(c)(2)(A), 124 Stat. at 232 (codified at 42 U.S.C. 18082(c)(2)).  The insurers who receive the payments are required to reduce the premium charged to the insured by the amount of the advance premium tax credit received.  Id. sec. 1412(c)(2)(B).  The insurers also must notify the Secretary of Health and Human Services and the relevant exchange of the reduction in premiums and include the amount by which the premium was reduced as a result of the advance premium tax credit.  Id. sec. 1412(c)(2)(B)(i), (ii), (iii).

Reconciling the Credit Received With the Eligible Amount

Sometimes circumstances change, and a taxpayer's annual income might be more or less than the estimate that was used when the advance premium tax credit was determined. So at the end of the year, a taxpayer who receives an advance premium tax credit must reconcile the amount of the credit received (i.e., the premiums paid with the advance credits) with the eligible credit amount. Sec. 36B(f). This is done when the taxpayer files his or her annual income tax return. If the amount of the advance premium tax credit is more than the amount to which the taxpayer is ultimately entitled, the taxpayer owes the excess credit back to the Government, and it is reflected as an increase in tax. Sec. 36B(f)(2). For a taxpayer with income below 400% of the Federal poverty line, the amount of the tax increase is limited to $2,500. Sec. 36B(f)(2)(B). For a taxpayer with income greater than 400% of the Federal poverty line, there is no limit to the amount of the tax increase. Sec. 36B(f)(2); sec. 1.36B-4(a)(4), Example (5), Income Tax Regs. Such a taxpayer is not eligible for the credit, and the full amount of the advance premium tax credit received during the year must be included as a tax liability with the tax return. Id.

The McGuires

This brings us to the McGuires. The McGuires sought and received an advance premium tax credit. Their advance premium tax credit was based on Mr. McGuire's income. But then Mrs. McGuire found work, and with the addition of her income the McGuires' household income for 2014 rose above 400% of the Federal poverty line. Because the McGuires' household income exceeded that threshold, they are not entitled to any of the advance premium tax credit they received. See sec. 36B(c)(1)(A), (f)(2).

The McGuires note what they consider to be the unfairness of it all. As Mrs. McGuire put it:

> [The Commissioner argues] that if Petitioners are liable for the deficiency, then they would be no worse off financially than if the APTC had been terminated in early 2014. This is simply untrue and does not alter the fact that it was Covered California's responsibility to ensure clients only received the Advance Premium Tax Credit for which they qualified. We would never have committed to paying for medical coverage in excess of $14,000 per year. We cannot afford it and would have continued to shop in the private sector to purchase the minimal, least expensive coverage or gone without coverage completely and suffered the penalties. * * *
>
> * * * If we are deemed responsible for paying back this deficiency, it would be devastating and completely unjust. We hope and pray you are convinced that we have made every single effort to get Covered California to make proper adjustments to our reported income and subsequently to the Advance Premium Tax Credit we were qualified to receive without success. The whole purpose of the Affordable

Care Act was to provide citizens with just that, affordable healthcare. This has been an absolute nightmare and we hope you will rule fairly and justly today.

In other words, the McGuires considered themselves to have been trapped in a health plan that they could not afford without the subsidy provided by the ACA. And they ask us to rule "fairly and justly" or, otherwise stated, equitably.

But we are not a court of equity, and we cannot ignore the law to achieve an equitable end. Commissioner v. McCoy, 484 U.S. 3, 7 (1987); Stovall v. Commissioner, 101 T.C. 140, 149-150 (1993); Paxman v. Commissioner, 50 T.C. 567, 576-577 (1968), aff'd, 414 F.2d 265 (10th Cir. 1969). Although we are sympathetic to the McGuires' situation, the statute is clear; excess advance premium tax credits are treated as an increase in the tax imposed. Sec. 36B(f)(2)(A). The McGuires received an advance of a credit to which they ultimately were not entitled. They are liable for the $7,092 deficiency.

Accuracy-Related Penalty

In his notice of deficiency, the Commissioner makes a boilerplate determination of an accuracy-related penalty under section 6662(a). The notice identifies four possible causes for the underpayment: negligence, a substantial understatement of income tax, a substantial valuation misstatement, and a

transaction lacking economic substance.  Subsequently, the Commissioner conceded all accuracy-related penalties.

To reflect the foregoing,

<u>Decision will be entered for respondent as to the tax and for petitioners as to the penalty</u>.